WILLIAM GILLETTE and Others, Plaintiffs, *v.* STOLL FILM COMPANY, LTD., and EDUCATIONAL FILM EXCHANGES, INC., Defendants.

Supreme Court, New York County, November, 1922.

*Injunction — use of title " Sherlock Holmes " in moving picture film — alleged contract with author — when right to preliminary injunction not sustained — equitable discretion.*

ACTION for injunction.

*Nathan Burken*, for plaintiffs.

*Herman Goldman*, for defendants.

MARTIN, FRANCIS, J. This is a motion for a preliminary injunction in an action to restrain the defendants from using the title " Sherlock Holmes " or " Adventures of Sherlock Holmes " in connection with any motion picture; to require an account of profits, and to recover damages for the use of such titles. Sir Arthur Conan Doyle, the writer of detective stories, is the creator of Sherlock Holmes as the central figure in these stories. His works are of great celebrity and are copyrighted in this country as well as in Great Britain. Sherlock Holmes as the subject of a story means inevitably to every mind Sir Arthur Conan Doyle's creation. Under the copyright laws of the United States the author has the exclusive right to dramatize his works. The plaintiffs allege that by agreement with the author, in 1897 or 1898, their predecessors in interest caused the drama entitled " Sherlock Holmes " to be written by the plaintiff William Gillette, who played the title role. That agreement is not produced before the court; is said to have been lost; and from the case of *Hopkins Amusement Co.* v. *Frohman*, 202 Ill. 541, appears to have been limited to five years; and if so limited necessarily reinvested the author at the expiration of that period with all his original rights. Indeed, it does not appear that the Frohman contract, to which the plaintiffs trace the origin of their claim, involved a grant of motion picture rights (see *Manners* v. *Morosco*, 252 U. S. 317), which, however, the original producers of the drama purported to assign to the plaintiff Alcet Enterprises, Inc., long after the expiration of the five-year period. By a contract which is before the court Sir Arthur Conan Doyle in 1920 authorized the defendant Stoll Film Company, Ltd., to produce forty-six of his short stories as a motion picture serial. He warranted in the contract that he was the proprietor of all existing cinematograph rights therein. Since the defendants are acting by virtue of a contract with the author, and must be regarded as clothed with all the rights he himself retained, or has regained, the question is, primarily, of

what rights did he divest himself by the alleged agreement with the plaintiffs' predecessors, so far as that agreement may be deemed established? It is not enough for the plaintiffs to say that their claim is based rather on the continued use of the name " Sherlock Holmes " as a dramatic title than on the provisions of the Frohman contract. The failure to make a full disclosure of what that contract was and of what the mesne assignments were tends strongly to dissuade this court, in the exercise of its equity jurisdiction, from affording relief which is in its nature extraordinary, especially where such relief is sought preliminarily and where the grant of it involves an adjudication of merits and inflicts the gravest damage upon the defendants. Upon the proof before the court the Frohman contract cannot be deemed established as a contract conveying the motion picture rights and as still in effect. This is more true because the present litigation is against those who defend in the author's right, and is, therefore, not like *O'Neill* v. *General Film Co.*, 171 App. Div. 854, noting the distinction at p. 864. The litigation is concerned merely with the use of the name " Sherlock Holmes." If the author did not intend to part with the dramatic rights for more than five years — and this court is not convinced that the Frohman contract was to be of longer duration — it is unlikely that the author intended permanently to divest himself of the right to entitle subsequent dramatizations with the name of the chief character. If the term of a contract is limited all rights fall with its expiration. We may add that it does not even appear that the drama which, now that its day upon the boards is at an end, the plaintiffs have converted into a photo play was actually such as the Frohman contract contemplated and authorized, for the drama is thus described in the complaint itself: " That said drama was constructed upon a plot which was conceived by Gillette and original with him along lines, situations and climaxes unlike those contained in the Doyle stories and with characters created by the plaintiff Gillette and not being in any story or novel by said Doyle with the exception of the characters of ' Sherlock Holmes,' ' Moriarity ' and ' Dr. Watson ' and with the exception of one situation which was contained in one of the Doyle stories wherein the character of ' Sherlock Holmes ' causes a fire to be set in order to create a diversion to have the heroine disclose the hiding place of certain documents which ' Sherlock Holmes ' was seeking." The plaintiffs' version therefore, is not, as the defendants' representation is, a dramatization of the stories in which Sir Arthur Conan Doyle has presented Sherlock Holmes to the public, and with which the public associates this author and his favorite character. The plaintiffs claim, without regard to the common origin of the

titles of the two productions, that " Sherlock Holmes " has acquired a secondary meaning, and when used as a dramatic representation conveys to the public mind (all further description or distinctive advertising notwithstanding) the impression that the plaintiffs' production is to be presented to the expectant eye. In the mind of the present day public such secondary meaning cannot well be associated with a drama now retired from the stage or with a photo play just coming on. The title of the defendants' serial, " The Adventures of Sherlock Holmes," is strictly descriptive and, owing to the very nature of a serial of which different numbers are presented on different days must be used in connection with the title of the particular story or picture shown in order that those who wish to see the serial as such may know that they will not see the same adventure a second time. The plaintiffs' production is a seven-reel film, colloquially known as a feature because it forms the leading feature of a complete program. The defendants' production is a serial of two-reel films, each of which is used as an incidental attraction in connection with longer films, all of which can be seen by attending sixteen performances only. By those who are interested in either it is not likely that one production will be mistaken for the other. Those who wish to exercise a preference can discriminate without unusual attention; those who pay too little attention to tell one from the other cannot well be thought to be attracted to the defendants' production by expectation of seeing that of the plaintiffs. The motion for preliminary injunction should be denied, without prejudice to the determination of the merits upon the trial of the action for permanent injunction. Settle order on notice.

Ordered accordingly.